**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
CESAR MOREIRA, MARTIN CISNEROS,
FREDIS GOMEZ, LUIS M. RAMIREZ AND
ROBERTO CONTRERAS, on behalf of themselves
and others similarly situated,

                       Plaintiffs,

         -against-

SHERWOOD LANDSCAPING INC., MAIN
STREET NURSERY, ROBERT MCKEAN,
in his individual capacity, and RICHARD
MCKEAN, in his individual capacity

                       Defendants.
------------------------------------------------------------X

                             **MEMORANDUM**
                              **AND ORDER**

                              CV 13-2640 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      <u>P<span style="font-variant:small-caps">RELIMINARY</span> S<span style="font-variant:small-caps">TATEMENT</span></u>

        Plaintiffs Cesar Moreira, Martin Cisneros, Fredis Gomez, Luis M. Ramirez, and Roberto

Contreras ("Plaintiffs") bring this action on behalf of themselves and all similarly situated

persons against Defendants Sherwood Landscaping Inc., Main Street Nursery, Robert McKean,

and Richard McKean (collectively, "Defendants") alleging that Defendants violated the Fair

Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, and the New

York Labor Law ("NYLL") § 190 *et seq.* by failing to pay overtime wages. *See generally*

Second Amended Compl. ("SAC") [DE 70].  On March 31, 2014, this Court conditionally

certified a collective action for Plaintiffs' federal law claim, pursuant to the FLSA, 29 U.S.C.

§ 216(b). *See* DE 53.  Currently before the Court is Plaintiffs' motion for class certification,

pursuant to Fed. R. Civ. P. 23, for Plaintiffs' NYLL claims. *See* Plaintiffs' Memorandum of Law

in Support of Their Motion for Class Certification and Notice to the Class ("Pls.' Mem.")

[DE 59]. Defendants oppose the motion, arguing that Plaintiffs' proposed class does not meet the necessary prerequisites under Rule 23. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and Notice to the Class ("Defs.' Opp.") [DE 61]. For the reasons set forth below, Plaintiffs' motion for class certification is GRANTED.

## II.    BACKGROUND

The following alleged facts are taken from the SAC [DE 70];[1] the Affidavits of four of the five named Plaintiffs submitted in support of their Motion for Conditional Certification and referenced in the submissions on the instant motion, *see* "Moriera Aff.;" "Cisneros Aff.;" "Gomez Aff.;" and "Ramirez Aff.," attached as Ex. A to Plaintiffs' Mot. in Support of Circulation of Notice of Pendency [DE 18]; and the parties' submissions on the instant motion for class certification, *see* DE 59, DE 61-62.

Defendants provide exterior landscaping services for commercial and residential customers. SAC ¶ 35. All of the Plaintiffs worked as laborers for the Defendants, performing lawn and yard maintenance (*i.e.*, mowing lawns, planting, weeding, and yard clean up). *Id.* ¶¶ 37-38. Plaintiff Ramirez was employed by Defendants from March 2007 through June 2013. Am. Compl. ¶ 14 [DE 22]; Ramirez Aff. ¶ 2.[2] Plaintiff Cisneros worked for the Defendants from 2008 until March 2013. SAC ¶ 14; Cisneros Aff. ¶ 2. Plaintiff Moreira was employed by the

---

[1]    The parties cite the first Amended Complaint [DE 22] in their submissions on this motion, as that was the operative pleading at the time this motion was filed. However, as discussed in more detail below, while this motion was pending, Judge Seybert granted Plaintiff's motion for leave to file the SAC. *See* DE 69. Judge Seybert directed the Clerk of the Court to "docket the Proposed Second Amended Complaint . . . as the operative complaint," but noted, however, that the SAC "remains operative only to the extent that it is consistent with the Court's rulings herein." *Id.* Accordingly, the Court will refer to the SAC in its recitation of the alleged facts, except in instances where the SAC differs from the Amended Complaint on a point not consistent with Judge Seybert's Memorandum and Order.

[2]    According to the SAC, Ramirez "was and still is" an employee of Defendants. SAC ¶ 13.

Defendants from March 2010 until approximately December 2011. SAC ¶ 15; Moreira Aff. ¶ 2. Plaintiff Gomez was employed by Defendants from March 2006 through June 2013. Am. Compl. ¶ 17; Aff. ¶ 2.[3] Plaintiff Contreras worked for the Defendants from March 2010 until December 2012. SAC ¶ 17.

Commencing in March of each year, Plaintiffs allege that they and similarly situated current and former employees of the Defendants regularly worked from 7 a.m. to 7 or 8 p.m., six days per week. SAC ¶ 38. Thus, according to Plaintiffs, they regularly worked 66 hours per week for Defendants. *See id.* They were apparently paid an hourly wage ranging from $11.00 to 12.50 per hour. *Id.* ¶ 41. The SAC asserts that Defendants regularly paid Plaintiffs and similarly situated employees "straight time" for the hours worked each week, including hours worked in excess of 40 hours per week. *Id.* ¶ 43. However, Plaintiffs maintain they were required to be paid overtime pay at the statutory rate of time and one-half the regular rate of pay after they had worked 40 hours in a work-week. *Id.* ¶¶ 39. Plaintiffs further allege that they "worked more than forty hours in most workweeks in which they were employed by the defendants but were not paid overtime at the rate of one and one-half times the regular hourly rate of pay." *Id.* ¶ 40. Defendants' failure to pay overtime compensation continued throughout each Plaintiff's entire term of employment with Defendants. *Id.* ¶ 42.

Defendants' refusal and/or failure to pay overtime was knowing and willful, according to the Plaintiffs. *Id.* ¶ 45. The SAC goes on to note that Defendants willfully disregarded and purposefully evaded record-keeping requirements of the FLSA and the NYLL by failing to maintain accurate time sheets and payroll records. *Id.* ¶ 44. Plaintiffs were paid partially in

---

[3]     According to the SAC, Gomez "was and still is" an employee of Defendants. SAC ¶ 16.

cash, with no accurate indication as to their rate of pay or their total hours worked each day/week. *Id.* ¶ 46.

Specifically, Plaintiffs allege that while they punched timecards, up until the year 2013, their paychecks never showed any hours worked in excess of 40 hours per week, notwithstanding the number of hours they had actually worked. *See* Ramirez Aff. ¶ 7; Cisneros Aff. ¶ 3. Defendants would then pay the overtime hours in cash at the straight time rate. Cisneros Aff. ¶ 3; Gomez Aff. ¶ 3; Ramirez Aff. ¶ 6.[4] Further, Plaintiffs Gomez, Cisneros, and Ramirez purportedly complained about Defendants' wage and hour policies, but nothing was done to remedy the situation. *See* Gomez Aff. ¶ 7; Cisneros Aff. ¶ 3; Ramirez Aff. ¶ 11. Plaintiff Cisneros states that his employment was terminated based on his complaints. Cisneros Aff. ¶ 3.

Finally, Plaintiffs allege that other landscapers working for Defendants also routinely worked a six-day work week and in excess of 40 hours per week. Cisneros Aff. ¶ 3; Gomez Aff. ¶ 3; Ramirez Aff. ¶ 4; Moriera Aff. ¶ 4. According to the Plaintiffs, approximately 100 other employees worked for Defendants at the location where Plaintiffs worked. Gomez Aff. ¶ 3; Ramirez Aff. ¶ 3; Moriera Aff. ¶ 3. Plaintiff Ramirez states that there are many other workers who were denied overtime during the time he worked for Defendants. Ramirez Aff. ¶ 12. Plaintiff Moriera believes that other workers were not paid overtime because "we sometimes discussed our earnings with one another." Moriera Aff. ¶ 7. Moreiera states that he knows of "many other workers" who suffered the same injury he did. *Id.* ¶ 10. Plaintiff Cisneros affirms that he has personally spoken to other similarly situated workers who informed him that Defendants engaged in the same payment practices, *i.e.*, paying by check for 40 hours of time

---

[4]     Plaintiffs allege that, in March 2013, Defendants modified their "double book system" by including 5 hours of overtime in Plaintiffs' paychecks, with the rest of the overtime hours paid in cash. Ramirez Aff. ¶ 8; Cisneros Aff. ¶ 3; Gomez Aff. ¶ 6.

worked, with the remainder of overtime pay distributed as straight hourly pay in cash.  Cisneros

Aff. ¶ 9.  Plaintiff Moreira also notes that many similarly situated workers are "foreign born,"

have little formal education, and "may have been undocumented immigrants who were fearful

that they would be retaliated against if they tried to enforce their rights."  Moreira Aff. ¶¶ 9-10.

Moreira believes many of his former co-workers "still do not know that they have a claim for

overtime wages" and "would want to participate in this action so long as they know are

proceeding with many others."  *Id.*

## III.   RELEVANT PROCEDURAL HISTORY

Plaintiffs commenced this action on May 1, 2013.  DE 1.  On August 13, 2013, Plaintiffs

filed a motion asking the Court (i) to conditionally certify a collective action pursuant to the

FLSA, 29 U.S.C. § 216(b); and (ii) to issue an order directing Defendants to produce the names

and addresses of all potential class members employed by them for the relevant time period.  *See*

DE 18.  Judge Seybert referred Plaintiffs' motion to this Court for a decision.  *See* DE 19.

While Plaintiff's conditional certification motion was pending, Defendants moved to

dismiss the Amended Complaint, arguing that the Court lacked subject matter jurisdiction

because Defendants made offers of judgment to Plaintiffs, pursuant to Fed. R. Civ. P. 68.  DE 24.

According to Defendants, these offers of judgment, although not accepted by Plaintiffs, had

rendered the action moot.  *See id.*  Plaintiffs thereafter identified three additional plaintiffs who

filed opt-in notices to the collective action.  DE 29, 48 & 52.  On February 12, 2014, Plaintiffs

also moved for leave to amend the Amended Complaint.  DE 51.

By Order dated March 31, 2014, this Court granted Plaintiffs' motion for conditional

certification and certified the following group:

> "All past and present non-exempt employees of Sherwood
> Landscaping, Inc., *et al.*, employed any time on or after six years

> prior to the filing of the Complaint, or any time on or after May 1, 2007."

*Id.* at 26. The Court further (i) directed Defendants to provide Plaintiffs within 14 days of entry of the Order with a list of the names and addresses of non-exempt employees employed by them after May 7, 2007; and (ii) authorized Plaintiffs' proposed Notice of Pendency and Consent to Join form, subject to modifications discussed in the Order, and directed Plaintiffs or their designated representative to mail a copy of the Notice in English and Spanish to all of the potential opt-in plaintiffs within 30 days of entry of the Order. *Id.* Since the Court conditionally certified the collective action, Plaintiffs have identified three additional opt-in plaintiffs. *See* DE 54, 55, 56. On June 6, 2014, Plaintiff's filed the instant motion for class certification.

On September 16, 2014, Judge Seybert issued a Memorandum and Order (i) denying Defendants' motion to dismiss the Amended Complaint for lack of subject matter jurisdiction; and (ii) granting Plaintiffs' motion for leave to amend the Amended Complaint to add (a) Richard McKean as a defendant and (b) a new cause of action for improper payroll deductions under the NYLL. DE 69. In denying Defendants' motion to dismiss, Judge Seybert found that Defendants' Rule 68 offers of judgment "did not moot this case." *Id.* at 12. At the outset, Judge Seybert noted that "the Second Circuit has suggested that an unaccepted offer of judgment for complete relief does not divest a court of subject matter jurisdiction until the court enters judgment against the defendant." *Id.* at 12 (citing *Cabala v. Crowley*, 736 F.3d 226, 228 (2d Cir. 2013)). Based on the circumstances present in this case, Judge Seybert further determined that the Rule 68 offers of judgment to the named Plaintiffs did not divest this Court of subject matter jurisdiction "because Plaintiffs have sufficiently disputed the amount owed to them." *Id.* In particular, Plaintiffs correctly identified "some inconsistencies between the hourly rates and/or the durations of employment detailed in the time records and the actual numbers Defendants

used to calculate the offers of judgment." *Id.* at 13. A large portion of the time records were also "illegible" and Plaintiffs disputed their accuracy. *Id.* Accordingly, Judge Seybert held that it was "not possible for the Court to determine if each offer of judgment provides more than what Plaintiffs could recover at trial." *Id.*

In light of Judge Seybert's Memorandum and Order, Plaintiffs' SAC was filed on September 16, 2014. DE 70. Defendants filed their Answer on September 30, 2014, DE 71, and the parties subsequently entered into a stipulation in which Defendants conceded liability and damages for making impermissible payroll deductions pursuant to NYLL § 193 for uniform cleaning. DE 73.

On December 23, 2014, counsel for Defendants filed a letter motion seeking a 30-day extension of the deadline to complete discovery in light of settlement discussions between the parties. DE 80. That same day, the parties consented to the jurisdiction of a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c). DE 81. The Court granted the requested extension, *see* Elec. Order Dec. 29, 2014, and Judge Seybert thereafter signed the consent order resulting in the case being re-assigned to this Court for all purposes. DE 82. Plaintiff later informed the Court that the parties had been unable to reach a settlement and requested that the Court rule on the instant motion for class certification. DE 84.

## IV.   LEGAL STANDARD

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)) (internal quotation marks omitted). "To establish that the exception is applicable to a given case, 'a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23.'" *Perez v.*

*Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745, at *11 (E.D.N.Y. Sept. 16, 2014)

(quoting *Comcast*, 133 S.Ct. at 1432) (internal quotation marks omitted). "The party seeking

class certification bears the burden of establishing by a preponderance of the evidence that each

of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir.

2010).

Class certification pursuant to Rule 23 requires a two-step analysis. First, "the court must

be persuaded, 'after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"

*In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 82 (S.D.N.Y. 2007) (quoting *Gen. Tel. Co. of Sw. v.*

*Falcon*, 457 U.S. 147, 161 (1982)). These prerequisites are as follows:

> (1) the class is so numerous that joinder of all members is
> impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately
> protect the interests of the class.

Fed. R. Civ. P. 23(a); *see, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *Teamsters*

*Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

"Once a court has concluded that Rule 23(a)'s four requirements have been satisfied, it must then

proceed to the second step, *i.e.*, determine 'whether the class is maintainable pursuant to one of

the subsections of Rule 23(b).'" *Perez*, 2014 WL 4635745 at *13 (quoting *Vivendi*, 242 F.R.D.

at 83); *see also Comcast*, 133 S.Ct. at 1432 (noting that, in addition to satisfying Rule 23(a)'s

requirements, a party "must also satisfy through evidentiary proof at least one of the provisions

of Rule 23(b)"). "Generally speaking, Rule 23(b) addresses the types of relief available, as well

as the rights of absent class members." *Perez*, 2014 WL 4635745 at *13 (citing Fed. R. Civ. P. 23(b)).

In this case, Plaintiffs seek certification under Rule 23(b)(3). *See* Pls.' Mem. at 9. This provision requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When considering whether Rule 23's requirements have been met, the United States Supreme Court has instructed courts that it "may be necessary for [them] to probe behind the pleadings before coming to rest on the certification question," and further, "that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quoting *Falcon*, 457 U.S. at 160–61 (internal quotation marks omitted)). This analysis often will "overlap with the merits of the plaintiff's underlying claim," as questions concerning class certification may be "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (quoting *Falcon*, 457 U.S. at 160) (internal quotation marks omitted). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194–95 (2013) (citation and internal quotation marks omitted). That is, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195 (emphasis added). Ultimately, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Spread Enters., Inc. v. First Data Merchant Services Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y.

2014) (quoting *Kowalski v. YellowPages.com, LLC*, 10 Civ. 7318, 2012 WL 1097350, at *12 (S.D.N.Y. Mar. 31, 2012)).

Although the Court's analysis in the class certification context must be "rigorous," courts generally "take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class." *Spread Enters.,* 298 F.R.D. at 66 (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012); *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000)). Indeed, "[c]ourts in this Circuit have displayed 'a preference for granting rather than denying class certification.'" *Morris v. Alle Processing Corp.* ("*Morris I*"), 2013 WL 1880919, at *5 (E.D.N.Y. 2013) (quoting *Gortat v. Capala Bros.* ("*Gortat I*"), 257 F.R.D. 353, 361 (E.D.N.Y. 2009)); *see Marisol A. v. Giuliani*, 126 F.3d 372, 277 (2d Cir. 1997). "Moreover, 'where a collective action under the FLSA that is based on the same set of facts has been approved there is an inclination to grant class certification of state labor law claims.'" *Morris I*, 2013 WL 1880919, at *5 (quoting *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 104–05 (E.D.N.Y. 2011)); *cf. Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together.") (collecting cases)).

## V.   DISCUSSION

### A.   Availability of Class Action for Plaintiffs' NYLL Claims

As an initial matter, Defendants contend that Rule 23 class certification should be denied because the NYLL does not permit class actions seeking liquidated damages. *See* Defs.' Opp. at 2-3. Section 901(b) of New York's Civil Practice Law and Rules ("NYCPLR") precludes the

use of the class action mechanism where the underlying statute provides for a penalty of liquidated damages. Here, Plaintiffs' NYLL claims provide for liquidated damages. *See* N.Y. Lab. L. §§ 198, 663; *see also* SAC ¶¶ (ii) & (iii) (prayer for relief). Defendants assert that, although Plaintiffs could potentially pursue a class action if they waived their right to liquidated damages, Plaintiffs have not done so and they therefore cannot proceed as a class action on their NYLL claims. Defs.' Opp. at 3.

Defendants' argument fails in light of the Supreme Court's decision in *Shady Grove Orthopedics Assocs. P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 130 S.Ct. 1431 (2010)—a case of which Defendants are apparently unaware. In *Shady Grove*, the Supreme Court concluded that Rule 23 preempts section 901(b) of the NYCPLR, which bars class action plaintiffs from seeking "penalties" such as liquidated damages. 559 U.S. at 398-410, 130 S.Ct. at 1436-42 (plurality opinion); 559 U.S. at 428-36, 130 S.Ct. at 1455-60 (Stevens, J., concurring in part and concurring in judgment). "In other words, the Supreme Court held that section 901(b) does not apply to state law class actions filed in federal court." *Morris v. Alle Processing Corp.* ("*Morris II*"), No. 08-CV-4874, 2013 WL 3282948, at *1 (E.D.N.Y. June 27, 2013) (citing *Shady Grove*, 559 U.S. at 398-410). Post-*Shady Grove*, courts in this Circuit "have consistently allowed plaintiffs to amend their pleadings to include claims for liquidated damages under sections 198 and 663 of NYLL that were previously barred by section 901(b)," even though "jurisdiction over the NYLL claims was supplemental to federal question jurisdiction over FLSA claims." *Id.* (collecting cases); *see Chenensky v. New York Life Ins. Co.*, Nos. 07–CV–11504, 09–CV–3210, 2012 WL 234374, at *2 (S.D.N.Y. Jan.10, 2012) ("The *Erie* analysis driving *Shady Grove* applies to courts exercising supplemental jurisdiction as well as those exercising diversity jurisdiction."). Thus, contrary to Defendants' contentions, Plaintiffs "do not need to waive their

claims to liquidated damages" in order to proceed as a class action. *Morris I*, 2013 WL 1880919, at *6.

Accordingly, the Court finds that class certification of Plaintiffs' NYLL claims, including those for liquidated damages, is appropriate.

## B.    Rule 23(a) Prerequisites

### 1.    *Numerosity*

Rule 23(a)(1) permits a class action only when the "class is so numerous that joinder of all members is impracticable." "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993); rather, "Rule 23(a)(1) only requires that, in the absence of a class action, joinder would be 'simply difficult or inconvenient.'" *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 67 (E.D.N.Y. 2014) (quoting *Russo v. CVS Pharm., Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001); *see also Casale v. Kelly*, 257 F.R.D. 396, 405 (S.D.N.Y. 2009).

The Second Circuit has held that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995); *see, e.g.*, *Perez*, 2014 WL 4635745 at *14; *Garcia*, 281 F.R.D. at 104. "'As plaintiff bears the burden of demonstrating numerosity, he must show some evidence of or reasonably estimate the number of class members.'" *Spread Enters.*, 298 F.R.D. at 67 (quoting *Russo*, 201 F.R.D. at 295). However, courts also "are empowered to make common sense assumptions to support a finding of numerosity.'" *Morris I*, 2013 WL 1880919, at *7 (quoting *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (citing *Hamelin v. Faxton–St. Luke's Healthcare*, 274 F.R.D. 385, 394 (N.D.N.Y. 2011) ("[P]laintiffs may rely on reasonable inferences drawn from the available facts to estimate the size of the class.")). "In wage and hours cases, courts 'assess the numerosity

requirement based on the size of the proposed class rather than the number of opt-in plaintiffs.'" *Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10 CV 5255, 2013 WL 2395288, at *4 (E.D.N.Y. May 31, 2013), *adopted by* 2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013) (quoting *Guan Ming Lin v. Benihana New York Corp.*, 10 CIV. 1335, 2012 WL 7620734, at *4 (S.D.N.Y. Oct. 23, 2012), *adopted by* 12013 WL 829098 (S.D.N.Y. Feb. 27, 2013)).

Plaintiffs assert that they have satisfied the numerosity requirement by identifying a potential class of over 70 members. Pls.' Mem. at 5. Subsequent to this Court's Order certifying the collective action, Defendants furnished payroll records containing the names and addresses of 86 individuals employed by Defendants in 2007. *See* Declaration of Delvis Melendez in Support of the Motion for Class Certification ("Melendez Decl.") ¶ 6; *see* Employee List, attached as Ex. A to Melendez Decl. Plaintiffs note that, of the 86 employees listed on the payroll records provided by Defendants, 71 employees were "landscapers." *See* Melendez Delc.¶ 6; *see id.*, Ex. A. As a result, Plaintiffs contend that, based on these and other records obtained during discovery, as well as "[c]ounsel's discussions with the named plaintiffs," they believe the potential class consists of "approximately 70+ members." *Id.* ¶ 16; *see* Pls.' Mem. at 5. Plaintiffs also note that "[d]ue to the transient nature of the employees; their limited reading and writing skills; and current employee's fear of reprisal only a handful of potential class members elected to affirmatively opt-in to the collective action." Melendez Decl. ¶ 4.

Defendants argue that Plaintiffs have not established numerosity because their potential class is limited to 27 current and former employees who, like Plaintiffs, served on Defendants' "Maintenance Crew." Defs.' Opp. at 13. According to Defendants, Plaintiffs overestimated and miscalculated their potential class by erroneously including (i) 13 "exempt" office and administrative employees; (ii) 20 employees who are "not similarly situated" as Plaintiffs

because they received overtime compensation once they commenced employment with

Defendants in 2013 or 2014; and (iii) 12 employees from Defendants' landscaping department –

*i.e.*, six Planting Laborers; five Seasonal Planting Crew; and one Lawn Care Member – who,

according to Defendants, performed different services from the Maintenance Crew, worked on

different projects, and had different managers. *Id.* at 7-10.

In their Reply, Plaintiffs dispute that they incorrectly estimated the class size at around 70

prospective members. *See* Reply Memorandum of Law in Further Support of Plaintiffs' Motion

for Class Certification ("Pls.' Reply") at 3-5. Primarily, Plaintiffs note that their estimated

potential class does not include the 13 exempt office employees listed on Defendants' payroll

records. *Id.* at 4.[5] Plaintiffs also point out that Defendants have not provided evidence, such as

payroll records or affidavits, to support their claim that 20 employees should be excluded from

the potential class because they received overtime compensation during their employment in

2013 or 2014. *Id.* Plaintiffs have provided a second Affidavit from Plaintiff Ramirez. Ramirez

---

[5]     Plaintiffs contend in their Reply that Defendants originally produced a list of 40
employees in response to the Court's March 31, 2014 collective action certification Order. *See*
Declaration of Delvis Melendez In Reply to Opposition for Class Certification ("Melendez Reply
Decl.") ¶ 4. The named Plaintiffs reviewed the list and concluded that it was missing many
names of landscapers who worked with them during the applicable period. *Id.* ¶ 5.
Consequently, Plaintiffs asked Defendants to supplement their response "by producing any and
all payroll records, including records for employees paid in cash." Pls.' Reply at 3-4 (citing
Melendez Reply Decl. ¶ 6) (emphasis omitted). Defendants supplemented their response by
producing Paychex records and Quickbooks records. Melendez Reply Decl. ¶ 7. The Paychex
records include the names of 86 employees, *id.* ¶ 8, and according to Plaintiffs, "the Quickbooks
records reflect an additional six employees whose names were not included on the Paychex
payroll records: Jose Granados, Jose Chavez, Pedro Fuentes, Martin Lazaro, Omar Denis, and
Mario Parada," *id.* ¶ 9 (citing Quickbook Recs., attached as Ex. C to Melendez Reply Decl.). In
his supplemental Affidavit, Plaintiff Ramirez avers that each of these six employees performed
similar duties as he did between 2007 and 2013. Ramirez Reply Aff. ¶ 4, attached as Ex. C to
Melendez Reply Decl. Ramirez further asserts that he knows these employees were not paid
overtime compensation because they discussed these facts with him. *Id.* Based on the foregoing,
Plaintiffs assert that the Defendants' submissions show that they employed at least 92
employees. *Id.* ¶ 9.

believes Defendants' claim that these employees were hired in 2013 and 2014, and were therefore paid overtime, is "untrue" because Ramirez "worked with several of the twenty employees identified by the defendants *prior* to 2013, including William Aquilar, Jose Castro, Rene Crespo and Esmelin Rvias." Ramirez Reply Aff. ¶ 3 (emphasis in original). Finally, Plaintiffs note that Defendants have not provided evidentiary support for their argument that 12 landscapers who allegedly performed duties different from Plaintiffs must be excluded from the potential class. According to Plaintiffs, whether these employees performed different duties is "*immaterial*, since Defendants cannot, and do not claim that these employees are *exempt*, or that they were paid overtime." Pls.' Mem. at 5 (emphasis in original).

After reviewing the evidence and the parties' submissions, the Court concludes that Plaintiffs have satisfied Rule 23(a)(1)'s numerosity requirement. Plaintiffs assert that their potential class includes over 70 employees listed on Defendants' payroll records who worked as "landscapers." The Court finds this is a "reasonabl[e] estimate" of the number of potential class members which is not purely speculative and derives from evidence in the record. *Spread Enters.*, 298 F.R.D. at 67. In other words, Plaintiffs have "rel[ied] on reasonable inferences drawn from the available facts to estimate the size of the class." *Hamelin*, 274 F.R.D. at 394 (citing *Gortat I*, 257 F.R.D. at 362; *Noble v. 93 Univ. Pl. Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204 (E.D.N.Y. 2005)). Although the parties dispute whether Plaintiffs have improperly included 13 exempt employees in its proposed class, the Court notes that, even if it resolved this dispute in favor of Defendants, Plaintiffs' proposed class would still exceed 40 potential members and would therefore satisfy Rule 23's numerosity requirement. *See generally Consol. Rail Corp.*, 47 F.3d at 483. Moreover, as Plaintiffs point out, Defendants have not provided support for their conclusory assertion that

20 proposed class members should be excluded from the class for having received overtime in 2013 and 2014 and, in any event, Plaintiffs have sufficiently rebutted this claim through Plaintiff Ramirez's supplemental Affidavit, in which he states under penalty of perjury that he worked with several of the named workers prior to 2013. Finally, Defendants have not cited evidentiary or legal support for their argument that the Court should not count 12 current and former employees in the proposed class because, according to Defendants, they performed different services from the Maintenance Crew, worked on different projects, and were supervised by different managers. *See* Defs.' Opp. at 10. As discussed in more detail below, differences among class members such as "the type of work performed[,] . . . 'concern the amount of damages to which any individual class member might be entitled if and when liability is found, not the amenability of plaintiffs' claims to the class action form.'" *Morris I*, 2013 WL 1880919, at *10 (quoting *Flores*, 284 F.R.D. at 127) (alteration omitted). Accordingly, the Court finds these 12 employees need not be precluded as proposed members of the class due their alleged job responsibilities.

Defendants further assert that Plaintiffs cannot show that joinder is "impracticable," and numerosity therefore has not been established, because (i) "[t]he opt-in procedures under the FLSA will allow any putative class members to join this action with relevant ease;" and (ii) all the proposed class members reside in Nassau or Suffolk County. Defs.' Opp. at 10-13. Defendants' arguments are misplaced. First, while the FLSA authorizes similarly situated persons to opt-into the federal action, it does not provide a procedure for adjudicating the opt-in plaintiffs' state law claims. *See Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Thus, to the extent Defendants suggest that class certification "will not lead to judicial economy

considering that the FLSA collective action already provides for easy participation in this litigation," the Court rejects that claim. *Guzman*, 2008 WL 597186, at *6. Moreover, courts have found the numerosity requirement satisfied where, as here, the plaintiffs assert that "potential class members may have failed to join the FLSA collective action because they feared reprisal, particularly given their citizenship status." *Jankowski v. Castaldi*, No. 01-CV-0164, 2006 WL 118973, at *2 (E.D.N.Y. Jan. 13, 2006) (citing, *e.g.*, *Noble*, 224 F.R.D. at 342). Second, Rule 23 does not require that the proposed class be dispersed over a wide geographic area in order for joinder to be deemed impracticable. "Impracticable does not mean impossible," *Robidoux*, 987 F.2d at 935, and geographic dispersion is only one of many factors a court might consider in assessing whether joinder is impracticable. Here, the Court finds that, although the proposed class members reside in the same general area, the factors on balance suggest that joinder would be impracticable, particularly in light of Plaintiffs' indications that some of the purported class members are the present employees of Defendants "and thus would presumably be hesitant to bring their own actions for fear of reprisal by the company." *Gortat I*, 257 F.R.D. at 363. Moreover, "the Court infers, as it may, that many if not most of the purported class members are persons with inadequate resources to exercise their rights by prosecuting their own claims" – another factor which tips toward the implacable status of joinder in this case. *Id.*

Accordingly, Plaintiffs have satisfied Rule 23(a)(1)'s numerosity requirement.

## 2. *Commonality and Typicality*

The commonality and typicality requirements "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence." *Falcon*, 457 U.S.

at 157 n. 13. "As a result, the commonality and typicality requirements tend to merge into one another, and similar considerations 'animate' the analysis of both Rule 23(a)(2) and Rule 23(a)(3)." *Morris I*, 2013 WL 1880919, at *8 (quoting *Marisol A.*, 126 F.3d at 376); *see Falcon*, 457 U.S. at 157 n. 13).

The commonality requirement under Rule 23(a)(2) is met when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). With respect to this requirement, the Supreme Court has recently observed that "[a]ny competently crafted class complaint literally raises common questions." *Dukes*, 131 S.Ct. at 2551 (internal quotation marks omitted). "What matters to class certification . . . .is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Id.* (internal quotation marks omitted) (emphasis in original). "That said, a single common issue of law or fact suffices to satisfy Rule 23(a)(2)." *Perez*, 2014 WL 4635745, at *15 (citing *Dukes*, 131 S.Ct. at 2556); *see Garcia*, 281 F.R.D. at 105 ("Courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members."). "Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Garcia*, 281 F.R.D. at 105 (quoting *Damassia*, 250 F.R.D. at 156) (internal quotation marks omitted); see also *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 415 (S.D.N.Y.) *on reconsideration in part*, 293 F.R.D. 578 (S.D.N.Y. 2013) *aff'd*, No. 13-3873-CV, 2015 WL 525697 (2d Cir. Feb. 10, 2015) ("[C]ommonality does not require plaintiffs to show that class members perform identical duties—an 'impossible task.'") (quoting *White v. Western Beef Properties*, No. 07 Civ. 2345,

2011 WL 6140512, at *3 (E.D.N.Y. Dec. 9, 2011)). "'A court may find a common issue of law even though there exists some factual variation among class members' specific grievances.'" *Perez*, 2014 WL 4635745, at *15 (quoting *Han v. Sterling Nat'l Mortg. Co.*, No. 09–CV–5589, 2011 WL 4344235, at *3 (E.D.N.Y. Sept. 14, 2011) (internal quotation marks and alterations omitted). "The commonality requirement may thus be met when individual circumstances of class members differ, but their injuries derive from a unitary course of conduct." *Id.* (internal quotation marks and alterations omitted); *see Guzman v. VLM, Inc.*, No. 07–CV–1126, 2008 WL 597186, at *6 (E.D.N.Y. Mar. 2, 2008).

Similarly, typicality under Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3). "This requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability.'" *Morris I*, 2013 WL 1880919, at *6 (quoting *Marisol A.*, 126 F.3d at 376) (citing *Garcia*, 281 F.R.D. at 106); *see Perez*, 2014 WL 4635745, at *17. "'Minor variations in the fact patterns underlying individual claims' does not defeat typicality." *Perez*, 2014 WL 4635745, at *17 (quoting *Robidoux*, 987 F.2d at 937).

Courts in this Circuit have observed that, in light of the Supreme Court's decision in *Dukes*, "the analysis of commonality and typicality has recently become stricter." *Morris I*, 2013 WL 1880919, at *9 (citing *Dukes*, 131 S.Ct. at 2551, and noting that "the Supreme Court explained that in order for claims to be 'productively litigated at once' they must depend on a 'common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"); *see Flores*, 284 F.R.D. at 125. However, "the weight

of authority rejects the argument that *Dukes* bars certification in wage and hour cases." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases). "In wage and hour cases, courts in this Circuit have 'focused on whether the employer had company-wide wage policies that injured the proposed class.'" *Morris I*, 2013 WL 1880919, at *9 (quoting *Flores*, 284 F.R.D. at 275) (citing *Youngblood v. Family Dollar Stores, Inc.*, No. 09–CV–3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011)); *see e .g.*, *Poplawski v. Metroplex on the Atl.*, LLC, No. 11–CV–3765, 2012 WL 1107711 at *7 (E.D.N.Y. Apr. 2, 2011).

"Moreover, 'claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.'" *Morris I*, 2013 WL 1880919, at *9 (quoting *Flores*, 284 F.R.D. at 275); *see Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y.2011) (collecting cases); *see also Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (finding that the employer's "overtime policy is the glue that the Supreme Court found lacking in *Dukes*" (internal quotation marks omitted)).

Plaintiffs argue that their claims raise questions of law and fact common to all members of the proposed class, including, *inter alia*, questions regarding whether Defendants failed to (1) pay overtime compensation at the statutory rate for all hours worked over forty hours each week, and (2) maintain complete records of the hours worked by members of the proposed class. Pls.' Mem. at 6. Further, Plaintiffs assert that the claims of both the named plaintiffs and the proposed class members "arise from the same course of conduct of Defendants and are based on the same legal claim – that Defendants breached their statutory obligations to pay the wages required under NYLL." *Id.* at 8. Defendants, on the other hand, argue that Plaintiffs have not satisfied the commonality and typicality requirements because their proposed class includes employees

"who were paid different rates of pay," Defs.' Opp. at 13-14, and "perform[ed] different job functions in different department[s] under different managers," *id.* at 17.[6]

The Court finds that plaintiffs have satisfied the commonality and typicality requirements. In particular, the named plaintiffs' claims and the proposed class members' claims arise from the same course of conduct (*i.e.*, Defendants' alleged practice and policy of failing to pay overtime at the statutory rate), raise common issues of law and fact (*inter alia*, Defendants' failure to pay time and half for all hours worked over forty), and are based on the same legal theories (violations of the NYLL). *See Morris I*, 2013 WL 1880919, at *9.

"More importantly, the factual variations cited by [D]efendants are not sufficient to preclude class certification." *Id.* at *10 (citing *Iglesias–Mendoza v. La Belle Farm Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("[C]ourts have found the requirement of commonality and typicality satisfied despite the existence of ... factual variations.") (collecting cases); *Robidoux*, 987 F.2d at 936–37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."); *see, e.g.*, *Perez*, 2014 WL 4635745, at *15. "Differences among class members as to the number of hours worked, the type of work performed, and the amount of pay received 'concern the amount of damages to which any individual class member might be entitled if and when liability is found, not the amenability of plaintiffs' claims to the class action

---

[6]     Defendants also assert, as they did in opposition to the numerosity factor, that commonality and typicality have not been met here because Plaintiffs' proposed class includes (i) 13 exempt employees and (ii) 20 individuals who have been paid overtime at a rate of time and one-half for all hours worked in excess of 40 hours when they commenced employment with Defendants in 2013 and 2014. Defs.' Opp. at 15-16. For the reasons previously discussed, the Court rejects these arguments.

form.'" *Morris I*, 2013 WL 1880919, at *10 (quoting *Flores*, 284 F.R.D. at 127) (citing

*Ansoumana*, 201 F.R.D. at 86 (finding differences among plaintiffs as to number of hours

worked, type of work, and amount of pay related to amount of damages); *Noble*, 224 F.R.D. at

343 (same)).[7]

Accordingly, Plaintiffs have satisfied the commonality and typicality requirements.

### 3.    *Adequacy of Representation*

Finally, Rule 23(a)(4) permits class certification only if "the representative parties will

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To ensure that

all members of the class are adequately represented, district courts must make sure that the

members of the class possess the same interests, and that no fundamental conflicts exist among

the members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013); *see, e.g.*, *Morris I*, 2013

WL 1880919, at *11 (to satisfy Rule 23(a)(4), "'plaintiffs must show that . . . the class

representatives' interests are not antagonistic to the interest of other members of the class'")

(quoting *Garcia*, 281 F.R.D. at 107).[8]

---

[7]    In arguing that "[i]ndividual inquiries will be required" to determine whether Plaintiffs and the proposed class were properly paid overtime in this case, Defendants rely solely on Judge Block's decision in *Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 234-35 (E.D.N.Y. 2013), *reconsideration denied* (June 25, 2014). The Court finds Defendants' exclusive reliance on *Enriquez* misplaced in light of the weight of authority in this Circuit, acknowledged in Judge Block's decision denying reconsideration, which held that claims "that an employer has systematically failed to pay employees the legally mandated wage" still satisfy the commonality factor after *Dukes*. *Enriquez*, 993 F. Supp. 2d at 237 (citing, *e.g.*, *Jackson*, 298 F.R.D. at 164; *Morris*, 859 F. Supp. 2d at 616); *see also Morris I*, 2013 WL 1880919, at *9. Accordingly, the Court does not feel constrained to follow the holding in *Enriquez* in this case.

[8]    Before the adoption of the 2003 amendments to Rule 23, Rule 23(a)(4) also required courts to consider whether class counsel was qualified, experienced, and able to conduct the litigation. *Perez*, 2014 WL 4635745, at *18 (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir.1996)). "After the 2003 amendment to Rule 23(g), however, 'the issue of appropriate class counsel is guided by Rule 23(g) rather than Rule 23(a)(4).'" *Id.* (quoting *Spencer v. No Parking Today, Inc.*, No. 12–CV–6323, 2013 WL 1040052, at *20 (S.D.N.Y. Mar. 15, 2013) (citing cases), *report & recommendation adopted*, 2013 WL 2473039 (S.D.N.Y. June

Defendants posit two arguments why Plaintiffs are inadequate class representatives, neither of which are persuasive. First, Defendants assert that the named and opt-in Plaintiffs who were "terminated" from employment by Defendants cannot adequately represent a class made up of both current and former employees because terminated employees "do not have an interest in the welfare of Defendants' business." Defs.' Opp. at 18. However, courts in this Circuit have roundly rejected the notion that termination from employment alone impacts a representative plaintiff's adequacy as a class representative. *See Perez*, 2014 WL 4635745, at *18 ("[T]he Court cannot see how the reason for Perez's and Brown's termination would be relevant to a determination of whether they had substantially the same job duties as all other members of the NYLL Class and were misclassified as exempt employees."); *Iglesias–Mendoza*, 239 F.R.D. at 372 (rejecting argument that representative plaintiff was inadequate class representative because she had been fired for misconduct); *Garcia*, 281 F.R.D. at 107 (same); *Guzman*, 2008 WL 597186, at *7 (same). As Defendants have offered no evidence to show that the ability of any of the Plaintiffs "to represent the interests of the NYLL Class fairly and adequately" has been impaired by their prior termination by Defendants, the Court finds this issue is not relevant for purposes of establishing their adequacy as a class representatives under Rule 23. *Perez*, 2014 WL 4635745, at *18. Second, Defendant maintains that Plaintiffs cannot represent class members if the Court determines that Plaintiffs' claims have been "mooted" by Defendants' Rule 68 offers of judgment. Defs.' Opp. at 18. Needless to say, this argument has itself been mooted by Judge Seybert's September 16, 2014 Memorandum and Order which, *inter alia*, denied Defendants' motion to dismiss for lack of subject matter jurisdiction upon finding that Defendants' Rule 68 offers of judgment "did not moot this case." DE 69 at 12.

7, 2013)) (citing *Jones v. Ford Motor Credit Co.*, No. 00–CV–8330, 2005 WL 743213, at *18 (S.D.N.Y. Mar. 31, 2005) (discussing 2003 amendment)).

Accordingly, plaintiffs have demonstrated adequacy sufficient to satisfy the requirements of Rule 23(a)(4).

## C.       Rule 23(b)(3) Prerequisites

Having determined that the prerequisites of Rule 23(a) have been met, the Court must decide whether the proposed class fits within one of the three categories of cases set forth in Rule 23(b). Plaintiffs contend that the class should be certified under Rule 23(b) (3), which applies when "the court finds that the questions of law or fact common to the members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.       *Predominance*

The predominance element of Rule 23(b)(3) requires a showing that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "A court's inquiry into this element 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation' and is similar to the analysis of the commonality and typicality requirements." *Morris I*, 2013 WL 1880919, at *12 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see Perez*, 2014 WL 4635745, at *19. "'To meet the predominance requirement, a plaintiff must establish that the issues that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof.'" *Morris I*, 2013 WL 1880919, at *10 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132–33 (2d Cir. 2001); *see Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). "Further, predominance is satisfied where . . . the 'central issue' is whether defendants had a 'uniform policy or practice' of denying

wages for all hours worked, overtime wages, and spread of hours compensation. *Morris I*, 2013 WL 1880919, at *12 (quoting *Garcia*, 281 F.R.D. at 108); *see Guzman*, 2008 WL 597186, at *8.

Plaintiffs do not address predominance as a separate factor and instead incorporate it into their arguments as to commonality. *See* Pls.' Mem. at 5. To that end, while Plaintiffs represent that the "proof" required to prove liability "will be the same" across the class, *see* Melendez Decl. ¶ 18, they do not specify such evidence. However, "[d]espite plaintiffs' lack of detail, the Court finds that a determination on the legality or illegality of defendants' practices is susceptible to common proof, thus satisfying the predominance requirement." *Morris I*, 2013 WL 1880919, at *12 (citing *Morangelli v. Chemed Corp.*, No. 10-CV-876, 2013 WL 4321571, at *23 (E.D.N.Y. Feb. 4, 2013) ("[T]he key is whether liability issues are susceptible to common proof. Differences between plaintiffs may often interfere with common proof but where, as here, documentary evidence allows for class-wide determinations of these issues, certification remains appropriate.")). Mainly, documentary evidence, such as the employee punch cards and payroll records, could be used to help resolve issues of Defendants' liability on Plaintiff's overtime claims. *Id.*

Defendants argue that Plaintiffs cannot establish the predominance requirement "for the same reasons plaintiffs cannot meet the commonality and typicality requirements," *i.e.*, because "[d]istinct issues of fact and law exist." Defs.' Opp. at 20. In particular, Defendants reiterate that the proposed class members "worked for different departments under different managers" and "received different rates of pay." *Id.* Additionally, Defendants assert "individual inquiries will be required to resolve issues such as whether an employee was or was not paid time and a half for overtime hours worked, and the degree of any alleged underpayment." *Id.*

In essence, Defendants' arguments concern the potential for individualized damages, which the Court must also consider as part of its predominance analysis. *See Comcast Corp.*, 133 S.Ct. at 1433. Having considered the nature of damages in this case, the Court concludes that, "[a]lthough determinations as to damages will require individualized inquiries here, such inquiries will not bar certification because common liability issues otherwise predominate." *Morris I*, 2013 WL 1880919, at *13 (citing *Noble*, 224 F.R.D. at 345; *Niemiec*, 2007 WL 5157027, at *12 (finding issues raised by plaintiffs' failure to pay overtime claim subject to generalized proof and "predominate over individual issues such as the alleged exempt status of the superintendent class members or the swapping of weekend schedules by class members"). *Perez*, 2014 WL 4635745, at *22 (holding that "the common issues of law and fact . . . predominate despite the presence of individualized damages," and noting that "[o]ther district courts within this Circuit, whose decisions this Court finds persuasive, have recognized that common issues of liability predominate over individual damages issues in wage-and-hour cases like this one") (collecting cases). Moreover, "[e]ven if each class member had to present some evidence of his or her individual damages, there is no suggestion that this would be a complex process, and the Court, in its discretion, does not find that any challenge presented by the calculation of damages undercuts the predominance of common issues concerning liability." *Perez*, 2014 WL 4635745, at *22.

In sum, common questions of liability predominate over individual inquiries as to damages here. See, e.g., *Perez*, 2014 WL 4635745, at *24; *Morris I*, 2013 WL 1880919, at *14. Accordingly, plaintiffs have satisfied the predominance requirement under Rule 23(b)(3).

## 2. *Superiority*

Rule 23(b)(3) also requires a class action "be superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "District courts in this Circuit 'routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation and many potential class members are currently employed by Defendant.'" *Morris I*, 2013 WL 1880919, at *14 (quoting *Garcia*, 281 F.R.D. at 108); *see Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (collecting cases)); *Tiro v. Public House Investments, LLC*, Nos. 11–CV–7679, 11–CV–8249, 2012 WL 6053961, at *8 (S.D.N.Y. Dec. 4, 2012).

In the instant case, Plaintiffs' proposed class "is significantly numerous and possess[es] relatively small individual claims." *Morris I*, 2013 WL 1880919, at *14. Moreover, Plaintiffs' submissions indicate that many potential class members are foreign-born, have limited reading and writing skills, and may fear reprisal from Defendants. *See* Melendez Decl. ¶ 4; Moreira Aff. ¶¶ 9-10; *see also Morris I*, 2013 WL 1880919, at *14 (considering that "many class members are currently employed by [Defendant] and/or of foreign descent, they may fear reprisal and lack familiarity with the American legal system" as factors indicating that a class action is superior to other methods of litigation). Accordingly, "not only would a class action in the instant case allow for a 'more cost-efficient and fair litigation of common disputes' than individual actions, but it is likely the only device by which many of the proposed class members would obtain relief. *Morris I*, 2013 WL 1880919, at *14 (quoting *Garcia*, 281 F.R.D. at 108); *see Iglesias–Mendoza*, 239 F.R.D. at 373 (finding it "extremely unlikely" that proposed class members would pursue separate actions where they were "almost exclusively low-wage workers with limited resources

and virtually no command of the English language or familiarity with the legal system"). "Furthermore, 'a class action is superior to other available methods, given that the NYLL claims are nearly identical to the FLSA claims, which will be tried collectively in this Court." *Morris I*, 2013 WL 1880919, at *14 (quoting *Garcia*, 281 F.R.D. at 108).[9]

Given these considerations, the Court concludes that a class action is superior to other available methods for fair and efficient adjudication. The interest of the class as a whole to litigate the predominant common questions outweighs any interest of individual members to bring and prosecute separate actions. Accordingly, the Court finds that plaintiffs have satisfied the superiority element of Rule 23(b)(3) and class certification is warranted.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs motion for class certification is GRANTED. The parties are directed to submit, within fourteen days of this Order, a jointly proposed notice for Court approval.

**SO ORDERED**

Dated: Central Islip, New York
       March 31, 2015

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        United States Magistrate Judge

---

[9] Defendants' only argument against a finding of superiority is the availability and alleged "ease" for potential class members to opt-in to Plaintiffs' FLSA collective action. *See* Defs' Opp. at 19. However, this argument is no more persuasive with regard to superiority than it was when Defendants raised it with regard to the practicability of joinder. Thus, for the reasons discussed, the Court finds that, notwithstanding the existence of Plaintiffs' FLSA collective action, a class action would still "be superior to other available methods for fair and efficient adjudication of" Plaintiffs' NYLL claims. Fed. R. Civ. P. 23(b)(3).